We will proceed to the next case on the argument calendar, which is Grabowski v. Arizona Board of Regents. All right, so as I understand it, Mr. Walker? Yes, sir. You're going to go for 10 minutes, Ms. Brodsky is going to go for 5 minutes, and then Ms. Watercotti for 15 minutes. Yes, sir. All right, whenever you're ready, counsel. I'd like to reserve 2 minutes for rebuttal, Your Honor. Okay. I'm William Walker. I'm counsel for the appellant, Michael Grabowski. And I'd like to begin with just a very short summary of the allegations in his complaint. The discrimination which went on against him, and I'll get to that in a minute, went on for over a year. It went on almost daily. The complaints that were made, according to the complaint, were made not only by him on a regular basis, not only to his coaches, but also to the associate director of athletics at the university. There were complaints made to a number of university officials regularly. Counsel, we are, I think, all of us familiar with the allegations of the complaint. And I just wanted to ask you the following question. At paragraph 23, the complaint alleges that the teammates who engaged in the alleged harassing behavior perceived that your client is gay. If that allegation weren't there, or if the proof turns out to show that the harassers knew that he's not gay, but just hated him for some other reason, I assume that all of these claims would fail. Is that true or not true? I don't think so, Your Honor. I think that it presents a closer case. But I think that even if they didn't perceive him as gay, if they harassed him because he was gay, if they engaged in other… It would not be on account of anything other than they hated me and wanted to upset me. I guess that's what I'm exploring with you. You're asking is if they didn't really think he was gay, but they were just doing this as… Because they're, you know, mean, nasty people or whatever, for whatever reason. I don't know what would happen in that case, Your Honor. Okay, fair enough. I mean, we did make that allegation in the complaint. It is there, yes. Yes, it is there. Yes, it is. And that's what Judge Graber read. So the question I have is this. With regard to the claims that removing your client from the team, as opposed to the retaliation claim, violated his constitutional rights. You've made that claim, right? Yes, sir. So what is your best case that would put the individual defendants on notice at other than a high level of generality? That their actions, even taking your allegations as true, that they were doing it because of his perceived sexual orientation. What is your best case that would establish that they would know or should have known that doing so was a violation of his constitutional rights, so as they would not be entitled to qualified immunity in their individual capacities? It may be, Your Honor, that initially they would not have known. And I think you might be right. But this continued for over a year. No, but what I'm saying is what they did to your client was basically they kicked him off the team. They took away his scholarship. Yes, sir. So let's assume for the minute that there's sufficient allegations in the complaint that they did it because they perceived he was gay. Yes, as alleged in the complaint. But what is your best case for the fact that those actions should have been known to them as violating his specific constitutional rights? You're talking about the individuals now. Yes, the individuals. Not the coaches. Yes. Because the coaches clearly knew. No, I'm saying what case is there that establishes that taking away someone's athletic scholarship and kicking them off a team is a violation of rights protected by the federal constitution? I have looked for such a case, Your Honor, and been unable to find one. However, I think it is logical to assume that if you punish someone for discriminatory activity, if you claim that they're gay, and if they make complaints and you claim retaliation and they, at that point, kick you off the team, that's clearly a damage. It may be a damage, but unless it's a property interest in the athletic scholarship or a property interest in membership on the team, then I'm not sure where the constitutional violation, as distinct from a statutory or tort claim, would come from. And if there's no such case that establishes that a scholarship is a protected property interest, then why wouldn't the university defendants be entitled to qualified immunity? He certainly had a protected interest in attending the University of Arizona. He wasn't kicked out of school. He was denied a scholarship, and you just said that you weren't aware of any case that establishes that an athletic scholarship is a protected property interest. No, ma'am, but the fact that there's not such a case doesn't mean this shouldn't be that case. Well, it means perhaps that there's qualified immunity for those defendants if they didn't know that this was a protected property interest. I think that's one of their best arguments. However, I will tell you that qualified immunity I don't think is discernible at a motion to dismiss or a motion for judgment on the pleadings. Qualified immunity is qualified, and it's qualified because of certain circumstances. And I think the circumstances have to be elucidated, and then they have to be proven. Except if the problem is the lack of any case authority, that is not something that discovery or summary judgment papers or anything will alter. If there is no case that has established this as a property right, then nothing about the factual development will change, it seems to me. Well, I disagree with Your Honor, and I disagree because in general the cases say that damages don't have to be alleged in the complaint. That's Rule 7 or Rule 8. It just says all you have to do is allege damages generally. In this case, this is a case where this man went to every superior he could think of to complain about this. But it's an element of your claim that he was deprived of an educational opportunity or benefit, correct? Yes. Where are the facts that support the blanket assertion, and it's at ER 47, paragraph 108, where you allege that the discrimination against your client deprived him of educational opportunities, but there are no factual allegations that support that statement. Can you point us to any facts that support that statement? I can point you to a lot of facts that I didn't put in the complaint because I thought my complaint was sufficient. But he had to leave the University of Arizona because he had no scholarship. He had to go to another college in another state and get a scholarship there. Well, possibly you could allege those things if there were an opportunity to re-plead, but they're not in here now. The only thing that I saw that was in here now is that he was sad and he went to see a therapist because he was sad, but that isn't really by itself the deprivation of an educational opportunity. Well, he didn't just go because he was sad. Well, that's what the complaint says. I don't know what else is correct because all we have is the complaint at this point. Yes, ma'am. Yes, ma'am. And what I'm saying is that I don't think at the complaint stage— When did he leave the University of Arizona? He left the University of Arizona as soon as that semester was over, and he applied at another college. And you're telling us that if you were, for example, given the opportunity to re-plead, you would re-plead that and re-plead that he left because of the loss of the athletic scholarship? I would. All right. Counsel, you wanted to reserve two minutes. We'll give you the two minutes on rebuttal, and we'll now hear from your friend. Thank you. Good morning, and may it please the Court. I'm Alexandra Brodsky for Amici Civil Rights Organizations. If I may, I'd like to start with the premise underlying the university's Title IX arguments, that Michael has not sufficiently pleaded that the harassment in this case was sex-based. That's wrong for two primary reasons, Bostock and the pleading standard. First, Bostock means that anti-gay discrimination is inherently sex discrimination. As a result, anti-gay harassment is inherently sex-based harassment. And this Court held in Snyder that Bostock applies to Title IX, and that's a point the university no longer disputes. Second, at this juncture, assuming that we agree with your argument that Mr. Brodsky has sufficiently alleged sex-based discrimination under Bostock and Snyder, do you take a position on whether the complaint sufficiently alleges that the harassment deprived him of access to educational opportunities or benefits? Yes, Your Honor. I think the best case on this point would be Jennings, which is an en banc opinion from the Fourth Circuit. It's Jennings v. UNC, where the Fourth Circuit talked about how pervasive harassment on a sports team, actually, that so deprived the student of the ability to enjoy that extracurricular experience was sufficient to show an educational deprivation. Do you recall whether in that case the student was on an athletic scholarship or not? I can't remember, Your Honor. I'm sorry about that. And, you know, also, if I may, I'd like to talk about the university's use of Davis and On Call. So the university puts a lot of weight on On Call's language, that conduct tinged with sexual connotations won't be sex-based. But that's an opposite for at least two reasons. First, that language in On Call is talking about sexual innuendos, comments about sex acts, which are logically a couple steps away from discrimination on the basis of sex, within the meaning of Title VII, meaning sex as identity, not sex as act. And second, we're not talking here about terms that hint at a sex-based meaning. The terms used here were sex-based on their face. And, Judge Graber, I think that goes to your initial question about if the complaint had not alleged that the harassers told Michael that they perceived him as gay, whether that would be enough. And I think at this stage, it still would be because there would at least be an inference from the content of the harassment, from the particular anti-gay slurs. But we're not required to decide that issue. That's absolutely correct, Your Honor, yes. Because, you know, from the complaint where we've got anti-gay slurs and the teammates telling Michael we think you're gay, that is more than enough to plausibly allege anti-gay discrimination. Similarly with Davis, the university relies on language that ordinary playground teasing won't usually be actionable, even when it's gendered. But that language from Davis is about why the harassment must be severe and pervasive, not what makes harassment sex-based. And I think it's important to disaggregate those two requirements here, that Michael was faced sex-based harassment and that he faced severe and pervasive harassment because I think the university and to some extent the district court conflate those two requirements. As to the retaliation claim, you know, the harassment here was severe and pervasive, but even if it weren't, Michael and his parents still engaged in a protected activity when they reported it. And the university doesn't dispute that there is this wall of authority that says that a plaintiff is protected when he or she reports harassment that is not yet actionable. Instead they say that Michael is different because essentially he was too sophisticated. But it is a big leap to say that the fact that the complaint said that Michael knew that there was something called Title IX, knew it maybe had something to do with sexual harassment, means that therefore he knew all the elements of Davis' claim and how to apply those. I certainly think that there is nothing in the complaint that suggests that Michael was not engaged in a good faith, reasonable, protected activity with a reasonable belief that he was reporting discrimination. The university also said. I think, I'm sorry. No, go ahead. It seemed to me that they were using that as an attack on credibility more than as something substantive on the merits, but that also isn't for us at this stage, I believe. That's absolutely right, Your Honor. I'm sorry. No, my question was essentially going to be exactly the same. If we were to send this back and it were to go to a trial, it's possible a jury might conclude that, but that's not for us. I think that's absolutely correct, Your Honor. And that goes, again, also to the motive of the harassers. That the university is welcome in discovery to try to prove that there was some other kind of motive at play here, but that's not for this early stage. Right. I think the university's position is that he was actually a harasser of women, the plaintiff was, and that that led to some of the negative things that happened to him. And he's arguing, I guess, that that's pretextual. I think that's correct, Your Honor. And, again, a question for summary judgment, a question for trial, not for this early stage. Do you have any concluding points? I don't. Just thank you. We appreciate the opportunity to participate in oral argument today. Thank you. Thank you. Good morning. May it please the Court. My name is Patricia Watercotty, and I represent the University of Arizona, the Arizona Board of Regents, the head track and field coach, Frederick Harvey, and the former assistant track and field coach, Francis Lee. I would like to start by addressing counsel Fergrabowski's argument about perceived, about this case being alleging perceived sexuality. As the Court pointed out, there's only one allegation in the complaint that alleges that they perceived him as gay, and that's in paragraph 23. Well, once enough. Right. But it's consistent with the other allegations. There are numerous allegations that they called him a fag and other things, and we're just at the pleading stage. That may or may not turn out to be true, but I have a hard time seeing that it's insufficient at the pleading stage. It is insufficient at the pleading stage. Why does it support an inference, at least, that the alleged bullying was done? I mean, it at least supports an inference. So it does not under Davis and Uncall v. Sundowner. In Uncall v. Sundowner, that sets forth the pleading standard for whether or not they've alleged that the bullying or the conduct is based on sex. But it wasn't about bullying. It was, as I think as amicus counsel pointed out, it was about sexual innuendo, which is different than the allegations here. So Uncall specifically says that words and conduct with sexual content are not enough. Counsel, I'm looking at paragraph 25 of the complaint. Judge Graber talked about paragraph 23. Members of the team began accusing the plaintiff of being gay, alleging to him and others that he was homosexual, gay, a fag. When you say there needs to be more in a complaint, I mean, I don't want to be facetious here, but what is it supposed to say? They said it. They said that he was, and they really believed it as opposed to they perceived him. I mean, what extra language would you need at the pleading stage to supplement the two paragraphs that I've read, which are not the only ones in there? There's lots of cases that talk about what would be needed. So first, let me just say that Davis and Uncall say that calling somebody gay or homo is not, he's saying calling him gay and homo is the same as accusing him of being gay. And all that we have here is the name calling of gay and homo. Except that's why I asked the question that I asked, because it specifically alleges that they actually perceived him to be gay. And that may turn out to be false when, you know, when the case gets further down the road. But it goes beyond simply saying that that's what they said to him. That's why I asked the questions that I asked earlier. Because if they knew he wasn't gay and used this just to taunt him because they didn't like him, that may or may not even be actionable. Whereas if they perceived him to be gay and they bullied him because they perceived him to be gay, that seems quite different to me. Well, one example cited in our motion to dismiss and our brief was Annie Evans v. Harrisburg School District. And that's the only case that we could find that used a claim, stated a claim based on perceived homosexuality within the Ninth Circuit. And what the court there said... Let's talk about that case for a second, because it applied to middle school children or elementary school children. So why should that reasoning apply to college students? Well, because it's still students. And the reasoning that I want to point out in that case is that they said that the only evidence that he was accused of perceived sexuality was the name calling. But there was no facts alleged that anybody actually thought he was gay or that they were calling him names. Well, we're not to the facts yet. That's the point. But we're to an allegation that they actually thought he was gay. And, you know, middle school children may not yet know what their sexual identity is. College students usually do. So it does seem to me that, again, it's quite different. Well, in other cases we cited, for example, to draw the line between the name calling and facts alleging they actually thought he was gay. For example, there was an allegation that a student said, well, I spoke out a lot about gay rights. And the students found out my brother was gay, and so they thought I was gay. So there was actually facts about perception of gay. Or there was facts about conforming. So you mean, for example, if he had put in there that, oh, they told me I dressed like I was gay, that that would be sufficient but not what's in paragraph 23 and 25? Well, yes. Because what's in paragraph 23 and 25 is nothing more than name calling using sexual connotations and sexual slurs. No, it is more than that, counsel. You're reading out the part where it says that they actually perceived him to be gay. So anyway, I'd appreciate your going to the question of qualified immunity and whether that's appropriate for the university officials with respect to what is currently pleaded against the coaches. Well, it's clearly it's the qualified immunity exists to protect coaches Harvey and coaches Lee unless he can prove a clearly established right was violated here. It's it's very clear in this case that he cited in the briefing Austin and Rutledge. They both assumed without deciding that there is no protectable interest in the scholarship. So your position would would be the same. I take it for the qualified immunity issue. If the complaint, instead of alleging what it did said, in addition, the only reason I was able to financially attend school was because of my scholarship. When the scholarship was taken away, I had to leave school because I had no other way of attending. If that hypothetical allegation had been made, would your qualified immunity argument be the same? Yes, yes, he has no protected interest in the scholarship. And that's a constitutional question, not a statutory question. So if there's if there is no clearly established law on the protectability of a scholarship as a property interest, they would still succeed. I take it that's your argument. I'm not sure I understand your question. Well, if the problem with the argument, if the problem with the allegation is that there is no clearly established law that a scholarship or at least an athletic scholarship is a protected constitutionally protected property interest. Then what are there any allegations that the plaintiff could make that would salvage that claim? The constitutional claim is distinct from the statutory, the Section 1983 claim. I don't think there's any allegations that would salvage his claim in this case. And to his point about this should be decided later on, Al Kidd versus Alvarez versus Al Kidd makes it clear that this needs to be decided at the earliest point in the proceedings. Let me let me follow up a minute on Judge Graber's question. In paragraphs 66 and 67 of the complaint, there's an allegation that the plaintiff was assaulted by Coach Lee and one could draw. I'm sorry, by Coach Harvey. And one could draw the inference that he was assaulted because of his perceived sexuality. As I looked at the record, a plaintiff never made an argument below that this assaultive behavior formed the basis of any 1983 claim. But hypothetically, if that weren't waived and or forfeited, could that form a basis of 1983 liability? Those allegations in paragraphs 66 and 67 involving the plaintiff allegedly being assaulted and then then feigning. So he has alleged you mean if he changed the allegation to say these allegations, but having appropriately raised as part of his claim in the district court, say, in response to your motion to dismiss, we're making an assault claim. He was deprived of his liberty, interest, et cetera. The sort of the same thing in some of the police cases where the coach under color of state law physically assaulted him and basically caused him to faint. Well, number one, he did make an assault claim previously against Coach Harvey and he withdrew it. And number two, he never alleges the coaches had any conduct towards him because they perceived that he was gay. He alleges that they were deliberately indifferent to students, to Davila and Villarreal, name calling him based on being gay. The then I'd like to address next, the severe and pervasive standard moving on from the sex based conduct to there's also a pleading standard here at play for for severe and pervasive. And that's also under Davis v. Monroe. And under Davis v. Monroe, you have to show something more and above and beyond the name calling. You have to show a constellation of sex based conduct and you have to look at the ages, the school, the workplace, whether this was a teacher doing this versus a peer. Here we only have peers. And then, of course, the social context of it. And here the amici argued that verbal conduct, verbal harassment alone is sufficient to be severe. But all the cases that they cite, while they are verbal, they're not just name calling. And this is a very pleading standard issue under Davis because it's very specific that you can't. And he has alleged nothing else besides the name calling. No constellation of sex based conduct. You know, in the other cases where the court finds that the pleading a constellation of conduct, there's there's other physical sexual acts that were perpetrated or threats of rape or something else creating this constellation of sex based conduct, which is just simply not alleged here. And then the second part of that, which Davis said is equally important to survey severe and pervasive such that it denies him the benefit of an educational opportunity. Those parts are equally important. And all we have is one conclusory allegation that he was denied a benefit. But there's no facts about a benefit. And one of the pleadings standards of it that Davis emphasized is there has to be at least some link alleged between the conduct and a deprivation of an educational benefit. And he alleged none here. In all the other cases, talking about deprivation of a benefit, there would be it doesn't have to be so extreme that it causes psychological damage, as Harris versus Forklift said. But there has to be something linked to it that they stopped going to class or they, you know, the classic example is not having equal access to a field. But that type of conduct isn't isn't an issue here. The question was raised earlier, whether if the if there were a an addition to the complaint that says the loss of the athletic scholarship caused the plaintiff to have to leave the university for financial reasons altogether, that presumably would be a sufficient deprivation. But what would have to be shown to link it to discrimination, in your view? Well, the what is required to allege that allege the deprivation is actually set forth in the cases that we have the Rutledge case that assumes without deciding. So it assumed without deciding that there was a constitutional right. But then it went on to say that they failed to state a claim because they didn't allege deprivation. They didn't allege a deprivation on the scholarship interest because they failed to allege any facts about what under what did the scholarship purportedly entitled them to and what did you not receive? You may have misunderstood my question. I'm asking you to assume that they could plead the deprivation by saying, I didn't get the money. I had to leave school. So my question to you is, what do they have to allege, in your view, to tie together what I'm telling you is for this hypothetical a deprivation to discrimination in order to state a claim? Well, I think that the link is not a very difficult standard to make. You just have to show that there was a relation between the severe and pervasive conduct and some sort of deprivation of an educational benefit caused by the sex-based, allegedly sex-based harassment. But what we're talking about here, though, is what was caused by the name-calling. What deprivation of a benefit was caused by that bullying? Right, that's what I was getting at because the harassment was by peers and the removal of the scholarship was by the university, not the peers. Right, and so what he didn't allege was, I couldn't go to track meets because I felt discriminated against by the bullying, or I stopped performing as well, or I didn't enjoy attending the competitions or my races. There's none of that alleged. Everything alleged is the opposite of that, that the purported name-calling didn't have any educational benefit. There's only a conclusory allegation that it deprived him of an educational benefit. Counsel, did you want to make a concluding point? Yes, thank you, Your Honor. The district court here got it right under Davis and on call. Those are the pleading standards applicable to this case. The threshold pleading standards both connecting the name-calling to anything sex-based, showing it severe and pervasive. It wasn't, there was no constellation. There was nothing besides the name-calling, and there's nothing in there that anybody actually thought he was gay. Just don't meet the pleading standards, and nothing that they have said today in argument changes their failure to meet the pleading standard and that he got it right. Thank you, counsel. Thank you. Counsel, you have two minutes for rebuttal. This is not just harassment by speech. As alleged in the complaint, when he first claimed he was the only one denied a bed at the camp, and he was denied a bed at the time that they were harassing him and telling him that he was gay and accusing him of that. Now, I can't tell you that he was denied a bed because they were harassing him, but circumstantial evidence surely indicates that the difference in treatment for him at the camp was because of the fact that they perceived him to be gay. In addition to that— But you don't allege that it's the teammates who choose the beds. I don't know who chose the beds. Well, then how can it be inferentially connected? Well, if you follow through for the whole year and you get all the accumulation of these things together, the circumstantial evidence surely seems to indicate that it was because of that reason. But it's not that that is the real linchpin here. The real linchpin here is the video, because the video, she says, well, there's no proof that anybody, either the students or the faculty, knew. It was a student that produced the video. The student was in the video calling him gay with a back thing of all these gay— This is to the public. This isn't to the team. This isn't to the coaches. This is to everybody. It was put on the Internet. It was in the Internet, as alleged in the complaint, at the time that this complaint was filed. So for over—for a long period of time, perhaps a year, this was on the video. The September 12th meeting is really important, because at that meeting there are two different constructs of what happened. That's what you're going to need to conclude. Yes. The first one is that we claim that he was called in, that he was told that he was off the team, that he was told by the coaches that there were rumors about him, that his name kept coming up. But in the complaint, it says that he was removed from the team because of the discrimination. All right. Thank you, counsel. Thank you. We have your argument. No. Sorry. Okay, sir. So we thank counsel for their arguments, and the case just argued is submitted.
judges: GRABER, BENNETT, DESAI